UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

      Plaintiff,

  v.                                          Case No. 11-CR-241

CHRISTOPHER HALFMANN,

      Defendant.

**ORDER DENYING DEFENDANT'S RENEWED MOTION FOR SEVERANCE**

On December 20, 2011, a federal grand jury in the Eastern District of Wisconsin returned a six count superseding indictment against defendants John J. Kellogg ("Kellogg"), Mark A. Barlament ("Barlament"), Michael A. Renken ("Renken"), and Christopher J. Halfmann ("Halfmann"). In Count One of the superseding indictment, Kellogg, Halfmann, and Barlament are charged with selling and transporting wildlife with a market value in excess of $350 that they knew had been taken and possessed in violation of Wis. Stat. § 29.024, in violation of 16 U.S.C. §§ 3372(a)(2)(A), 3373(d)(1)(B) and 2 (the "Lacey Act"). In Count Two of the superseding indictment, Kellogg, Halfmann, and Renken are charged with attempting to sell and transport wildlife with a market value in excess of $350 that they knew had been taken and possessed in violation of Wis. Stat. § 29.024 and § 29.184, in violation of the Lacey Act. The superseding indictment also references 16 U.S.C. § 2 in counts one and two, presumably intended to read 18 U.S.C. § 2, meaning that the defendants are also charged as aiders and abettors. In Counts Three, Four, Five, and Six of the superseding indictment, each of the four defendants is charged with

knowingly and willfully making a false, fictitious, and fraudulent statement as part of a federal criminal investigation, in violation of 18 U.S.C. §1001(a)(2).

Presently before the Court is Defendant Halfmann's motion for severance. Halfmann claims that he must be tried separately from his co-defendants to avoid undue prejudice. Specifically, Halfmann contends that unless he is tried separately, there is a substantial likelihood he would be prevented from offering exculpatory testimony from co-defendant John Kellogg at trial. Halfmann had previously moved the Court for a severance, but his motion was denied by the assigned magistrate judge because it was not supported by any evidence suggesting that Kellogg would even be willing to testify at a separate trial, let alone what he might say that would be exculpatory. Halfmann has now renewed his motion, this time supported by an affidavit by Kellogg in which Kellogg states that if Halfmann was tried separately he would be willing to testify that at no time prior to the hunts charged in the Indictment did he "discuss, propose, or negotiate with Christopher Halfmann that he assist me in providing guide services to other hunters on the instances charged in the Indictment." (Kellogg Aff. ¶ 3, 4.) Kellogg also states in his affidavit that he never gave Halfmann money or any other consideration in return for his assistance as a guide. (*Id*. ¶¶ 5-7.) This testimony would be crucial to his defense, Halfmann argues, because it negates the knowledge he would be required to have in order for him to be guilty either as a principal or an aider and abettor.

## ANALYSIS

The rules governing joinder and severance of parties for trial are designed "to promote economy and efficiency and to avoid a multiplicity of trials, [so long as] these objectives can be

2

achieved without substantial prejudice to the right of the defendants to a fair trial." *Zafiro v. United States*, 506 U.S. 534, 540 (1993) (citing Fed. R. Crim. P. 8(b) and 14). "[W]hen defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539. If a defendant can show that a joint trial will prevent him from offering exculpatory testimony from a co-defendant, severance may be necessary to avoid prejudice. *United States v. Echeles*, 352 F.2d 892 (7th Cir. 1965).

When considering a defendant's request for severance based on an allegation that a co-defendant will offer exculpatory testimony, the district court must consider three factors: (1) whether the co-defendant's testimony would be exculpatory; (2) whether the co-defendant would in fact testify; and (3) whether the testimony would bear on the defendant's case. *United States v. Magana,* 118 F.3d 1173, 1190 (7th Cir. 1997); *United States v. Tolliver,* 937 F.2d 1183, 1189 (7th Cir. 1991). To justify severance, a defendant must provide some support, such as an affidavit or the existence of recorded testimony, that his co-defendant would testify in a manner which would exculpate him. *United States v. Andrus,* 775 F.2d 825, 847 (7th Cir. 1985). There must, however, be concrete certainty that the co-defendant will testify favorably. "Severance cannot be granted on the basis of a vague, unsupported assertion that a co-defendant would testify favorably in a separate proceeding." *Tolliver,* 937 F.2d at 1189 (quoting *Andrus,* 775 F.2d at 847). There must also be a showing that the proposed testimony is important to the case. *Andrus,* 775 F.2d at 847. ("The showing that the defendant must make exceeds a showing that the potential testimony would make

3

acquittal more likely. Rather, the defendant must demonstrate that absent the testimony, he will be deprived of a fair trial.").

Here, Halfmann is charged with aiding and abetting a felony Lacey Act violation. In order to establish that a defendant committed such a crime, the Government must prove four elements: (1) the defendant sold or transported wildlife in interstate commerce or attempted to do so; (2) the defendant did so by knowingly engaging in conduct involving their sale; (3) the defendant knew the wildlife was taken, transported or possessed in violation of the law; and (4) the wildlife had a market value in excess of $350. *United States v. Fejes*, 232 F.3d 696, 700 (9th Cir. 2000). The market value of wildlife under the Lacey Act includes the price paid for a guided hunt, as well as the cost for a hunting permit. 16 U.S.C. § 3372(c). To prove that Halfmann aided and abetted the offense, the Government must prove that he knowingly associated and participated in the activity and tried to make it succeed. *United States v. Garcia*, 45 F.3d 196, (7th Cir. 1995).

The Government has described its case in a trial brief on file with the Court. (Gov't. Trial Br., ECF No. 52, at 7-17.) According to the Government's trial brief, after receiving a variety of reports that Kellogg, who operated a guide service in Wisconsin, was illegally killing wildlife, U.S. Fish and Wildlife Service (USFWS) Special Agent Steve Stoinski started an undercover investigation. In the course of the investigation, two investigators from the Kentucky Department of Fish and Wildlife Resources posed as out-of-state hunters looking to buy trained dogs from Kellogg. After first taking steps to insure the two were not undercover game wardens, Kellogg sold a hunting dog to one of the agents and later offered to guide them on a bear hunt using his dogs. Several hunts occurred, including two in which the two undercover investigators were introduced to Defendants Barlament and Renken, who each owned the bear hunting permits that Kellogg

4

illegally arranged for the agents to purchase. They were also introduced to Halfmann, who assisted on each of the hunts. Video was taken of the hunts and much of the interaction between the agents and the four defendants was audio recorded. The Government contends that it will prove Halfmann's knowledge and participation largely through his own words and actions observed by the undercover agents. In the face of this evidence, the Government contends, Kellogg's proposed testimony is not exculpatory.

As noted above, Kellogg states in his affidavit that if tried separately from Halfmann, he would testify at Halfmann's trial that he did not discuss, propose or negotiate with Halfmann about providing guide services for the hunts charged in the indictment, and that he did not offer or pay Halfmann money or other consideration for his assistance as a guide. Of course, the fact that Kellogg did not offer to pay or pay Halfmann for his assistance as a guide does not mean that he did not pay Halfmann to reimburse him for his own expenses or for some other work Halfmann performed in relation to the hunts. But even aside from this, whether Kellogg offered to pay or paid Kellogg for his assistance is irrelevant to Halfmann's guilt. Halfmann is charged with aiding and abetting the crime, not committing it entirely on his own. To prove he aided and abetted a Lacey Act violation, the Government need only prove he knew what was going on and assisted Kellogg in carrying it out. There is no requirement that Halfmann himself received money.

Nothing in Kellogg's affidavit suggests that Halfmann, who appears to have been friends with and hunted with Kellogg for some time, was unaware that Kellogg was making money from providing guide services on illegal bear hunts. Although Kellogg states that he never told Halfmann that he was providing such services in return for money, why would he? Kellogg operated a guide service as a business; the undercover agents were posing as out-of-state hunters illegally buying bear

5

tags. One would assume that Kellogg was making money. The fact that he never expressly stated as much to Halfmann is not exculpatory. *See Magana*, 118 F.3d at 1190 ("The fact that Aguilera claimed that Pinto never delivered cocaine to him simply does not exculpate Pinto of the charges set forth against him in the indictment. Pinto was charged not with actual delivery of cocaine, but with attempted distribution of cocaine, as well as being a member of the conspiracy to distribute cocaine.").

In essence, Halfmann's entire motion assumes that if Kellogg is willing to testify that he did not tell Halfmann that he was arranging illegal bear hunts for out-of-state hunters for money, then severance should be granted so that Halfmann can introduce such testimony at his own separate trial. But the Government is not claiming that Kellogg told Halfmann what was going on and proposes to offer no testimony that he did. The Government contends instead that it is clear from Halfmann's own words and actions, viewed in the context of the surrounding circumstances, that Halfmann knew precisely what Kellogg was doing and that Halfmann chose to assist him. In light of this evidence, Kellogg's proposed testimony adds nothing to the case.

To allow severance in a multi-party case upon such a meager showing would allow defendants to needlessly multiply trials and substantially increase the costs of prosecution. It could also allow severance to become an "alibi swapping device." *State v. Talavera*, 243 So.2d 595, 597 (Fla. 1971). What co-defendant would not be willing to testify at a co-defendant's trial that he did not tell his co-defendant the details of the crime with which they are both charged? It might be different if the Government was relying on Kellogg's alleged statements to Halfmann in order to show that Halfmann had the required knowledge. But that is not the case here. There is nothing for Kellogg to rebut as far as Halfmann is concerned. Since the jury will never hear evidence that

Kellogg told Halfmann the details of the crime, there is no reason for Halfmann to testify to what he did not tell Halfmann.

Accordingly and for the reasons set forth above, the motion for severance is **DENIED**.

**SO ORDERED** this   17th   day of August, 2012.

                                                s/ William C. Griesbach
                                                William C. Griesbach
                                                United States District Judge